UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANE D. HUTCHINS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV CUSTOMER SERVICE, INC., and JOHN/JANE DOES I through X, whose true identities are presently unknown,<br><br>Defendants. | Case No. 1:11-CV-422-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant DIRECTV Customer Service, Inc.'s Motion to Compel Binding Arbitration and Stay Proceedings (Dkt. 17), filed November 10, 2011.

## I. PROCEDURAL HISTORY

Plaintiff Shane D. Hutchins ("Plaintiff" or "Hutchins") filed a Complaint against DIRECTV on September 9, 2011 alleging that his rights under the Americans with Disabilities Act ("ADA") were violated during his employment and then subsequent termination. On October 24, 2011, Plaintiff amended his complaint to bring suit against DIRECTV Customer Service, Inc., ("DIRECTV" or "Defendant").

## II. FACTUAL BACKGROUND

On September 15, 2004, Hutchins submitted an application for Customer Service Manager at what is now known as the Boise Customer Care Center ("BCCC"). (Decker Aff.,

**MEMORANDUM DECISION AND ORDER - 1**

¶ 11, Ex. B, Dkt. 17).  The application contained a Pre-Employment Statement located above his signature on page 3 which stated, in pertinent part: "I understand that if I am employed by the company, I shall be required to sign an arbitration agreement, which requires final and binding arbitration of any and all claims I may have against the company."  (*Id*.)  On or around October 7, 2004, DIRECTV extended a contingent offer of employment to Plaintiff for the position of Customer Care Manager.  (*Id*. ¶ 12, Ex. C.)  This Contingent Offer contained a statement that employment was contingent upon, among other things, "signing a binding arbitration agreement."  (*Id*.)  The offer also stated that where applicable, the offer of employment was also contingent upon "successful completion of a new-hire Customer Service Representative training program which includes a three week new-hire training followed by a two week on-the-job training.  Employment is contingent upon your successful completion of each portion of the training program."  (*Id*.)

Since at least 2001, DIRECTV has conducted an orientation program for new hires before they begin performing any employment duties.  (Decker Aff., ¶¶ 3, 14, Ex. E).  The orientation program always starts on a Monday and usually includes about 20 employees, although that number can fluctuate based on the company's hiring needs.  *Id*. at ¶ 3.  DIRECTV's orientation program (referred to as 'on-boarding' its employees) is conducted by Human Resources personnel employed at the BCCC.  *Id*.  In 2004, there were three Human Resources staff members who regularly conducted these new hire orientations, two of whom were Melanie Decker and Diane Robertson.  (*Id*. ¶¶ 3, 5; Robertson Aff., ¶¶ 2-3, Dkt. 17).

When newly hired employees arrive for orientation, they are handed a folder of orientation information with their name, along with a manila envelope inside the folder.  The

**MEMORANDUM DECISION AND ORDER - 2**

folder contains information about employment with DIRECTV as well as forms that must be completed and returned before the end of orientation. (Decker Aff., ¶ 6; Robertson Aff., ¶ 6). One of the first segments of orientation involves a discussion of the various forms that each new employee is required to complete and return. Human Resources personnel conducting the orientation explain DIRECTV's policies through a Powerpoint presentation. (Decker Aff., ¶¶ 5-8; Robertson Aff. ¶¶ 5-8). Though they have changed some, orientations have been conducted in this manner since 2004. (Decker Aff., ¶ 6, Robertson Aff., ¶ 6).

One of the forms described during this process is DIRECTV's Mutual Agreement to Arbitrate Claims ("Arbitration Agreement") which new employees are required to sign and return. (Decker Aff., ¶ 6, Ex. F; Robertson Aff., ¶ 5). DIRECTV has required its employees to enter into the Arbitration Agreement since 1993. (Decker Aff. ¶¶ 4, 14, Ex. E; Robertson Aff., 4).

Employees attending the orientations are instructed to place the completed forms, including the Arbitration Agreement, in the manila envelopes which are returned to Human Resources. The contents of the envelopes are then audited to determine that all of the required forms have been properly signed and returned. As part of this process, a New Hire File Checklist is completed. Items that are missing are noted and Human Resources follows up with the employee. A copy of the checklist, along with the forms, are placed in the employee's personnel file. (Decker Aff. ¶¶ 6, 7, 9, 10; Robertson Aff., ¶¶ 6, 7, 9, 10).

The Arbitration Agreement that was distributed at the October 18, 2004 new hire orientation, states:

> Disputes which shall be submitted to binding arbitration for final
> resolution include: all claims or controversies, past, present, or

**MEMORANDUM DECISION AND ORDER - 3**

> future, except claims identified in the Arbitration Procedure under
> the heading "Claims Not Covered by the Agreement," arising out
> of an employee's employment or its termination, . . . that an
> employee may have against any of the following (1) the Company
> . . . [and] (3) the Company's parent subsidiary and affiliated
> entities . . . ("claims").

(Decker Aff., Ex. F).

The Arbitration Agreement states: "The parties' mutual promise to arbitrate differences, rather than litigate them before courts or other tribunals, provides adequate consideration for each other." (*Id.*) The Arbitration Agreement also provides that the employee "does not waive his/her right to file an administrative claim or complaint with the appropriate administrative agency, but does waive his/her right to file a civil action and a jury trial . . ." (*Id.*)

The Arbitration Agreement also expressly provides that "[a]rbitration under this Agreement may be compelled and enforced under the or according to the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*)." (Decker Aff., ¶ 15, Ex. F).

Hutchins began employment at BCCC on approximately October 15, 2004. (Hutchins Aff., ¶ 1). DIRECTV claims Hutchins attended a new hire orientation program along with approximately seventeen other individuals. (Decker Aff. ¶¶ 14-15). Of the seventeen individuals who attended the orientation, all but three of their personnel files were retrieved from storage by DIRECTV. (Decker Aff., ¶ 15, Ex. E). DIRECTV avers that thirteen of the individuals who attended the orientation with Hutchins signed and returned the Arbitration Agreement and the checklist reflected the same. (*Id.*, Ex. F). Hutchins' personnel file does not contain an Arbitration Agreement. (Decker Aff., Ex. E). However, the checklist contained in his personnel file has the Arbitration Agreement checked off. (*Id.* ¶ 13, Ex. D).

In response to this evidence, Hutchins says that he was scheduled for new hire training,

not an orientation, on his first day of work. Hutchins says that he missed some of that training because his supervisor, Steve Hawley, removed him during the training so he could meet his [sales] team.[1] (Hutchins Aff., ¶¶ 6-9). Hutchins also contends that during the time he was in the training, an arbitration agreement was never reviewed with him and he never signed one, nor did he do so after the training. (*Id*. ¶¶ 11-14). Hutchins attests that he reviewed his personnel file three times in 2009 and never saw an arbitration agreement in the file. (*Id*. ¶¶ 26-47.)

### III. DISCUSSION AND HOLDINGS

**A.     Federal Arbitration Act**

The Federal Arbitration Act ("FAA") provides that a party may seek an order from a federal district court to compel arbitration where another party fails, neglects or refuses to arbitrate. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Although the FAA sets forth a policy favoring arbitration, "a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Whether a party has

---

[1] Hawley states he has no memory of asking Hutchins to leave the orientation and it would have been highly unlikely for him to do so. (Hawley Aff., ¶¶ 4-5, Dkt. 20-3).

**MEMORANDUM DECISION AND ORDER - 5**

submitted to arbitration is first and foremost a matter of contractual interpretation that must hinge on the intent of the parties. *Id*.

B.   **The Record is Unsettled as to Whether There is a Valid Agreement to Arbitrate.**

The Ninth Circuit has recognized that there must be a *knowing* agreement to arbitrate the claims that arise under the Americans with Disabilities Act ("ADA"). *See Nelson v. Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997) (extending "knowing" requirement from a Title VII case to apply in ADA cases). The Ninth Circuit described this knowing agreement as a choice "that must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Id*. at 762. In that case, the employer issued an employee handbook containing an arbitration clause. The employee then signed an acknowledgment that he had received the handbook and agreed "to read it and understand its contents." *Id*. at 758. The acknowledgment did not mention the arbitration clause. The court held that "nothing in that acknowledgment notified [the employee] either that the Handbook contained an arbitration clause or that the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA." *Id*. at 761. The Ninth Circuit noted that the right to a statutory remedy provided by a civil rights law is not waived "when the employee performs his obligations by commencing or continuing to do his assigned work and accepting a paycheck in return." *Id*. at 762.

In interpreting the "knowingly" requirement from *Nelson*, one district court held that it requires "little more than an acknowledgment which includes language that refers to binding arbitration and notifies the employee that he or she is precluded from bringing a lawsuit for employment claims." *Twilleager v. RDO Vermeer, LLC*, 2011 WL 1637469 (D. Or. April 1,

**MEMORANDUM DECISION AND ORDER - 6**

2011).

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of America*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011) (citing *Perez v. Maid Brigade, Inc.*, 2007 WL 2990368, at *3 (N.D. Cal. Oct. 11, 2007)).

The FAA further provides, at 9 U.S.C. § 4: "[i]f the making of an arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed *summarily to the trial* thereof" (emphasis added). Challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991).

Hence, in this case the Court has a threshold responsibility to decide whether an agreement to arbitrate exists in this case. There are several disputed material facts that prevent the Court from making that determination on this record. These disputed facts include whether Hutchins attended the new hire orientation and whether he was ever presented, reviewed or signed the arbitration agreement. With these facts being in dispute, the Court cannot determine as a matter of law that an arbitration agreement was knowingly entered into by Hutchins, even though there are certainly inferences in the evidence to suggest that such an agreement was made. However, any inferences must be construed in favor of the non-moving party, here Hutchins, and the crucible of the courtroom will be necessary to ultimately decide the issue.

This issue will be decided separately from the other issues in the lawsuit. Fed. R. Civ. P. 42 provides that "[f]or convenience, . . . or to expedite and economize, the court may order a

separate trial of one or more separate issues . . ." Section 4 of FAA also allows for a jury trial on this issue, if so demanded. The Court construes Hutchins' demand for a jury in his Amended Complaint as a demand for a jury trial on this issue and this discrete dispute will be tried to a jury, unless the parties stipulate to a bench trial. Accordingly, the Court will bifurcate the case for these purposes and will issue a scheduling order setting a trial date for the initial issue of whether or not Hutchins entered into an arbitration agreement.

## ORDER

**IT IS HEREBY ORDERED that** DIRECTV's Motion to Compel Binding Arbitration (Dkt. 17) is **DENIED** at this time.

A discovery completion deadline of **June 8, 2012** is hereby set for limited discovery on the issue of whether Hutchins knowingly entered into an arbitration agreement with DIRECTV. An order setting the trial date and pre-trial deadlines will be forthcoming.

DATED: **April 6, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge