UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANE D. HUTCHINS, an individual, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV CUSTOMER SERVICE, INC., and JOHN/JANE DOES I through X, whose true identities are presently unknown, <br><br> Defendants. | Case No. 1:11-CV-422-REB <br><br> **MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant DIRECTV Customer Service, Inc.'s Motion for Summary Judgment (Dkt. 42) filed March 14, 2013, and Plaintiff Shane D. Hutchins's Motion for Partial Summary Judgment (Dkt. 48), filed March 15, 2013.

## PROCEDURAL BACKGROUND

Plaintiff Shane D. Hutchins ("Plaintiff" or "Hutchins") filed his First Amended Verified Complaint and Demand for Jury Trial (Dkt. 10) against Defendant DIRECTV Customer Services, Inc. ("Defendant" or "DIRECTV") on October 24, 2011.  Hutchins alleged that his rights under the Americans with Disabilities Act ("ADA") were violated during his employment and then subsequent termination.  Specifically, he brings five claims: (1) discrimination in violation of the ADA; (2) retaliation in violation of the ADA (failure to promote); (3) retaliation in violation of the ADA (placed on paid administrative leave July 13, 2010); (4) retaliation in violation of ADA (termination); and (5) negligent infliction of emotional distress.  Amend.

**MEMORANDUM DECISION AND ORDER - 1**

Compl., Dkt. 10.

At this juncture, DIRECTV moves for summary judgment on all five counts.  Hutchins

moves for partial summary judgment on Count IV (retaliation based on termination).  Hutchins

concedes that his negligent infliction of emotional distress claim is not actionable because he was

an at-will employee.  *See Sommer v. Elmore County*, 903 F. Supp. 2d 1067, 1076 (D. Idaho

2012).  Accordingly, that claim is dismissed.

## FACTUAL BACKGROUND

Hutchins began working at DIRECTV on or about October 15, 2004 as a Team Manager,

Customer Care, at the Defendant's Boise Customer Care Center ("BCCC").  Amend. Compl.,

¶ 9.  At the time he was hired, Steve Hawley was the Site Director at BCCC and held that

position until December 2007, when Stephen Rasmussen became the new Site Director.  Dale

Decl., Ex. A, Dkt. 47-1, Hutchins Dep. Vol. I, 65:2-24; Dale Decl., Ex. B-1, Dkt. 47-2--3,

Hutchins Dep. Vol. II, 28:13-25.  Thomas Zimmerman was the Senior Human Resources

Manager at BCCC from March 2008 through the end of January 2009.  Dale Decl., Ex. E, Dkt.

47-6, Zimmerman Dep., 12:6-7.  Dennis Buffaloe took over the position in April 2009, after

replacing an interim Human Resources Manager.  Dale Decl., Ex. F, Dkt. 47-7, Buffaloe Dep.,

12:5-14.

Hutchins was diagnosed with diverticulitis in August 2005 and subsequently had surgery

related to the condition in October 2005.  Amend. Compl. ¶¶ 15-16.  Since March 2005,

DIRECTV has had a Workplace Accommodation Process and maintains a separate medical file

on employees who seek an accommodation for disability.  There is no medical file for Hutchins

reflecting a request for accommodation.  Decker Decl., ¶¶ 4-6, Ex. A.  Hutchins never prepared a

**MEMORANDUM DECISION AND ORDER - 2**

written request for accommodation on the Human Resources' form.  Hutchins says that his request for an accommodation was made to Mr. Zimmerman in May 2008.  Hutchins stated he had "general conversations" with Ms. Robertson about his diverticulitis and irritable bowel syndrome ("IBS") from a "condition perspective."  Hutchins Dep., Vol. II, 54:12-55:11.

In an e-mail dated December 14, 2007, Senior Manager Kristen Lehman approved of Hutchins taking a two-hour meal period during his shift.  Ms. Lehman understood that the two-hour meal period request was made so Hutchins could spend time with his family.  Lehman Decl., Dkt. 44, ¶¶ 3-5, Ex. A.

In early May 2008, Mr. Rasmussen conducted an investigation into complaints he received from Team Managers regarding Hutchins.  He first talked to Hutchins about the complaints on May 9, 2008.  Hutchins Dep. Vol. II, Ex. 6, Dkt. 47-3.  The next day, Hutchins met with Mr. Zimmerman.  Hutchins asked Zimmerman if Mr. Rasmussen was aware that Hutchins had diverticulitis and IBS, conditions that caused him to take more time when he went home on lunches.  Mr. Zimmerman suggested that Hutchins visit with Mr. Rasmussen.  Hutchins Dep., Vol II, 80:1-25; Zimmerman Dep., 33:18-34:4.

Hutchins then talked to Mr. Rasmussen for a second time, and told him that he suffered from diverticulitis and IBS and explained that it caused him to be late coming back from meal breaks.  Hutchins Dep., Vol. II, 85:21-86:11; Dale Decl., Ex. D, Dkt. 47-5, Rasmussen Dep. 55:20-57:15.  A third meeting between Mr. Rasmussen and Hutchins occurred on May 16, 2008. In that meeting, Hutchins was given a Performance Improvement Plan (known as a "PIP").  The PIP included feedback Mr. Rasmussen received from Team Leaders who worked underneath Hutchins, who said that Hutchins was not balanced in providing feedback, that his teams did not

**MEMORANDUM DECISION AND ORDER - 3**

feel supported by him, that he was inaccessible and difficult to find, and that he was not

responsive to e-mails. *Id*. Mr. Rasmussen also addressed Hutchins' "lack of accountability,"

"extended lunch breaks (above the 2 hours agreed upon by the prior site director)", and times

when he did not work a full 8 hour shift or did not badge-in/badge-out correctly. Mr. Rasmussen

also said that when he showed the badge-in/badge-out report to Hutchins, Hutchins contested the

information, stating that he "felt it was not accurate and that [he] had never taken such extended

lunches." Rasmussen said further that earlier in the week, Hutchins told him that he "had

something to share with me that may explain why you were out for those extended periods of

time." Rasmussen said in the PIP that "the fact that you initially stated the reports were wrong

but now were explaining why you weren't at work once again causes me concern." Hutchins

Dep. Vol. II, Ex. 6.

The PIP included a six-point development and improvement plan, which stated that if

Hutchins was not able to return from lunch or time or not able to work a full 8 hours, he must

notify his manager and REM department. *Id*.

Between September 2009 and March 2010, Hutchins applied for five different positions

with DIRECTV, none of which he was awarded Amend. Compl. ¶¶ 40-65.[1]

On May 11, 2010, Hutchins filed a complaint of discrimination against DIRECTV with

the Idaho Human Rights Commission ("IHRC") and the United States Equal Employment

Opportunity ("EEOC") alleging discrimination based on the ADA. *Id*. ¶ 70.

On or about June 25, 2010, Hutchins received a letter from IHRC via his attorney

requesting that DIRECTV's response to his claim be reviewed and a rebuttal statement prepared,

---

[1] These positions are discussed in more detail in the relevant sections below.

**MEMORANDUM DECISION AND ORDER - 4**

specifically that he "write down all those things you disagree with, why you disagree with them and what evidence or information you possess which will support your position.  Include any documentation as well as any witness names, addresses and telephone numbers (if known) and a brief narrative of the facts to which you believe each witness will testify."  Hutchins Dep. Vol. II, Ex. 15.

On July 8, 2010, DIRECTV received complaints from Donna Bickler, a Team Leader supervised by Hutchins, who said that he had approached her the day before and requested that she write a favorable letter regarding his performance as a supervisor, which would support his complaint of discrimination.  Ms. Bickler said she was worried that if she did not agree to do so, he would retaliate against her, as he was her manager and in charge of her yearly review.  Dale Decl., Ex. H, Dkt. 47-9, Bickler Dep., 58:14-63:22; Buffaloe Decl., Dkt. 46, ¶¶ 5-7.  Ms. Bickler's complaints were first reported by another employee to Mr. Buffaloe, who was then the Senior Human Resources Manager, and then Ms. Bickler reported them directly to Mr. Buffaloe. *Id*.

On July 13, 2010, Mr. Buffaloe  approached Hutchins prior to the so called "calibration review"[2] scheduled for that day and asked to speak to him.  *Id*. ¶ 11.  Ms. Decker was also present at this meeting.  *Id*.  Buffaloe asked Hutchins whether he had asked employees to write a letter of support for his complaint of discrimination and asked him to identify who he had spoken

_____

[2]  DIRECTV conducts calibration reviews of its Team Leaders twice a year.  The meeting is attended by Team Managers, Senior Managers, the Senior Human Resources Manager, the site director and other members of senior management at BCCC.  Although the Team Leaders' immediate supervisor completes a written performance summary, the remaining Team Managers participate directly in the calibration review and have the ability to influence reviews of Team Leaders.  Buffaloe Decl. ¶ 9.

**MEMORANDUM DECISION AND ORDER - 5**

with.  Hutchins responded that he would need to consult his attorney prior to answering any questions.  Buffaloe described the complaint he had received from Ms. Bickler.  He placed Hutchins on paid administrative leave for refusing to participate in his investigation and Hutchins was then escorted off the premises.  *Id*.; Hutchins Dep. Vol. II, 183:21-184:20; Buffaloe Dep., 86:25-88:7.

Hutchins returned to BCCC later that same day with a letter from his counsel.  Amend. Compl. ¶¶ 85-86, Ex. B; Hutchins Dep. Vol II., 184:7-20.  The letter stated Hutchins was engaged in protected activity by investigating and gathering documentation following his complaint of discrimination filed with the IHRC and EEOC.  Amend. Compl., Ex. B.  Mr. Buffaloe told Hutchins his paid administrative leave would be continued as DIRECTV had not had a chance to review his counsel's correspondence.  Buffaloe Decl., ¶ 12.

On July 14, 2010, Ms. Bickler reported to Buffaloe that she had been approached by a Team Leader, Matt Sparks, who reportedly told her that Hutchins no longer needed the letter as Human Resources was on a "witch hunt."  He also stated he would deny the conversation with her if asked about it.  *Id*. ¶ 13.  Mr. Sparks denies speaking with Ms. Bickler about any of these matters.  Pl.'s MPSJ, Ex. 7, Dkt. 48-7, Sparks Dep., 51:23-52:24.

On July 15, 2010, DIRECTV's lawyer sent a letter to Hutchins' lawyer responding to the allegation that Hutchins' suspension constituted unlawful retaliation and rejected the demand that Hutchins be reinstated to his position.  Buffaloe Decl., ¶ 14, Ex. C.  DIRECTV explained in the letter that, pending the outcome of the investigation, Hutchins had been placed on paid investigatory suspension based on the information known to DIRECTV and Hutchins "refusal to cooperate."  *Id*.  Hutchins was requested to participate in an investigation of the complaints that

**MEMORANDUM DECISION AND ORDER - 6**

had been received.  *Id*.

Hutchins agreed to be interviewed and he met with Buffaloe on July 27, 2010.  He admitted to requesting letters for his complaint from Nathan Lease, Eva Bowman, Justin Sturgeon and Sherman William.  He denied making any request of a "direct report" and specifically, not Ms. Bickler.  Buffaloe Decl., ¶¶ 15-16; Buffaloe Dep., 89:11-25; Hutchins Dep. Vol. II, 157:13-165:14; 170:18-24; 171:12-175:4, 179:12-25, Ex. 17.  Following that meeting, Buffaloe interviewed the Team Leaders from whom Hutchins had admitted to requesting letters. Those individuals described the timing and circumstances of the requests.  Buffaloe Decl., ¶¶ 17, 19-20.  On July 30, 2010, Buffaloe called Hutchins and informed him that DIRECTV had not finished its investigation and a meeting was scheduled for August 10, 2010.  *Id*. ¶ 18.  Following these interviews, Buffaloe met with his supervisor, Bill McAllister, and the decision was made to terminate Hutchins' employment because his conduct in requesting letters from subordinate employees was deemed inappropriate for a manager given the fact that the requests were made in close proximity to a calibration review in which Hutchins had ability to influence reviews of the Team Leaders.  *Id*. ¶ 21; Buffaloe Dep., 106:21-107:2.  On August 10, 2010, Buffaloe called Hutchins and informed him that his employment was terminated.  *Id*. ¶ 22.

## SUMMARY JUDGMENT STANDARD

One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere

**MEMORANDUM DECISION AND ORDER - 7**

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's]

**MEMORANDUM DECISION AND ORDER - 8**

attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d

885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot create an issue

of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

## DISCUSSION

**1.     Hutchins' Claim of Discrimination is Dismissed**

Count One of the Amended Complaint alleges that DIRECTV discriminated against

Hutchins when it: (1) issued him the written warning (PIP) on May 16, 2008; (2) failed to

accommodate and continued to mention the written warning in future performance reviews; and

(3) denied him five promotions from September 2009 through March 2010.

The ADA makes it unlawful for a covered employer to "discriminate against a qualified

individual with a disability because of the disability of such individual in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."  42

U.S.C. § 12112(a).  To state a prima facie case under the ADA, a plaintiff must demonstrate that:

"(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or

without reasonable accommodation, to perform the essential functions of the job he holds or

seeks; and (3) that he suffered an adverse employment action because of his disability."

*Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000); *Nunes v. Wal-

Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).   Once a plaintiff has established a prima

facie case of discrimination, under the *McDonnell Douglas* burden-shifting scheme, the burden

shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment

action.  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003).  If the employer meets this

**MEMORANDUM DECISION AND ORDER - 9**

burden, the burden shifts back to the plaintiff to show that the given reason is merely pretext for discriminatory motives.  *Id*.

> **A.**     **Hutchins's Discrimination Claim Based on the Performance Improvement Plan is Time-Barred**

Hutchins was issued the Performance Improvement Plan (PIP) on May 16, 2008.  Title VII and the ADA both have a 300 day window after the "alleged unlawful employment practice occurred" in which a plaintiff must file a charge with the EEOC.  42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  Idaho has a similar charge-processing requirement, but the filing deadline is one year after the alleged unlawful practice.  Idaho Code § 67-5907(1).

Hutchins filed his charge with the EEOC and IHRC on May 11, 2010.  The charge was filed nearly two years after receipt of the PIP.  This is well over both the one-year statutory deadline for alleged state law violations and the 300 day-deadline for alleged federal law violations.  Accordingly, Hutchins's claim that his receipt of the PIP was a discriminatory act is time-barred.

Hutchins attempts to argue that conduct outside the statutory time period can be considered if the unlawful actions contribute "to [the] hostile work environment" and accordingly his claim is timely.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  Hutchins has not made any allegations of a hostile work environment and *Morgan* expressly states that: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id*. at 113.  His attempt to bootstrap the

**MEMORANDUM DECISION AND ORDER - 10**

PIP claim to actions that occurred within the statutory deadlines fails and this claim is dismissed.

### B.    Hutchins was Not Discriminated Against in his Performance Reviews

Hutchins alleges that DIRECTV failed "to accommodate [his] disability" and "repeatedly mentioned the written warning in future performance reviews, including and up to the 2009 full year performance review presented to Plaintiff in February of 2010."  Amend. Compl. ¶ 109. Allegations of discrimination by failing to accommodate a disability follow the same prima facie case outlined above, meaning plaintiff must show an adverse employment action.  *See Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003); *Moore v. Computer Associates Int'l, Inc.*, 653 F. Supp. 2d 955, 962 (D. Ariz. Sept. 2, 2009).

Hutchins alleges that his 2009 performance review, which makes reference to the 2008 PIP, was a discriminatory act.  In order for there to be discrimination under the ADA, there must be an adverse employment action.  Adverse employment actions include any decision by an employer affecting "compensation, terms, conditions, or privileges of employment."  42 U.S.C. § 2000e-2(a)(1); *see, e.g., Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  Any action negatively affecting the employee's compensation may constitute an adverse employment action, and under some circumstances a warning letter or negative review may also constitute an adverse action.  *Id*.

The 2009 performance assessment references Hutchins' PIP in three instances.  However, all the references to the PIP are in the context of acknowledging Hutchins' improvement in those areas, namely "accountability" and "judgment/integrity," as compared to 2008 when he received the PIP.  Amend Compl., Ex. A, pp. 9, 11, and 13.  Comments such as "great improvement in this area" and that he had done a "nice job meeting all requirements of his position" follow

**MEMORANDUM DECISION AND ORDER - 11**

references to the 2008 PIP.  *Id*.  Overall, Hutchins received ratings of either "successful" or highly successful" in all areas.  *Id*. at p. 16.  While it mentioned that he had been under an "action plan" the previous year, all comments noted his improvement in those areas.  The 2009 performance assessment cannot be deemed an adverse employment action, even when viewing the facts, and all inferences reasonably drawn from such facts, most favorably to Plaintiff.

### C.      Hutchins was Not Discriminated Against when He was Not Promoted

Hutchins alleges that he was discriminated against when he was denied five promotions for which he was qualified for between September 2009 and March 2010.  Amend. Compl. ¶ 110.   Refusal to promote is among the employment decisions that may constitute an adverse employment action.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  In construing the evidence in the light most favorable to Hutchins and assuming *arguendo* that Hutchins has established a prima facie case of discrimination, the burden would shift to DIRECTV to articulate legitimate, nondiscriminatory reasons for denying Hutchins these promotions.  DIRECTV has done just so.  There are five positions that Hutchins applied for: (1) two Senior Manager Customer Service positions in August 2009; (2) a Senior Manager Customer Service position in November 2009; (3) a Manager Business Operations position in June 2009; and (4) a Senior Program Manager Winback/Retention in March 2010.

DIRECTV has sufficiently met its burden of establishing legitimate, nondiscriminatory reasons for denying these promotions to Hutchins.  DIRECTV submits evidence from the Senior Human Resources Manager detailing who was hired for each of these positions and why they

**MEMORANDUM DECISION AND ORDER - 12**

were chosen (except the Winback/Retention position).[3]  Buffaloe Decl., ¶¶ 26-40.  For the

Manager of Business Operations position, the selected candidate had a stronger background,

including leading teams of employees and an educational background in systems and analytics.

*Id*. ¶¶ 29-30.  One of the Senior Manager Customer Service positions was filled by an individual

who was already serving in that capacity but had to reapply for the position.  *Id*. ¶¶ 31-32.  The

second individual awarded that position, Lisa Mesenko, had over 11 years experience in satellite

TV broadcasting with heavy emphasis in sales and marketing and was deemed to have a superior

background in terms of scope and responsibility in her prior positions.  *Id*. ¶¶ 35-38.  The last

person selected for a Senior Manager Customer Service position had consistently strong

performance reviews and was well-respected by his peers.  *Id*. ¶¶ 39-40.  DIRECTV has

adequately articulated legitimate, nondiscriminatory reasons for not promoting Hutchins to these

positions.  The other individuals were qualified for the positions and either had more experience,

better suited backgrounds or performed at higher levels than Hutchins.

Since the Court is satisfied that DIRECTV has demonstrated a legitimate

nondiscriminatory reason for why Hutchins was not promoted to these positions, the burden

shifts to Hutchins to show facts indicating that DIRECTV's explanation is pretextual.

---

[3] For the Senior Manager Customer Service position posted in August 2009, Kristen
Lehman, was had previously served as a Senior Manager for 29 months, was awarded the
position.  The next Senior Manager Customer Service position was awarded to Lisa Mesenko,
who was an original office manager at DIRECTV and held other positions of significance.  The
third Senior Manager Customer Service position was awarded to Ty Baker who served as an
interim upgrade Senior Manager prior to being selected for this position.  The Manager Business
Operations position was awarded to Heidi Wagner who had the requisite technical background
the position required.  Lastly, the Senior Program Manager, Winback/Retention was a corporate
position and handled by the corporate Human Resources/Staffing team in California and received
69 applications.  Buffaloe Decl., ¶¶ 26-40.

**MEMORANDUM DECISION AND ORDER - 13**

Circumstantial evidence of pretext must be "substantial" and "specific" in order to create a triable issue of whether the employer intended to discriminate. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). "A plaintiff can show pretext by revealing 'weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reason." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

As to this burden, the only evidence submitted by Hutchins, in addition to his own beliefs that he was better qualified for these positions, is an alleged statement that Mr. Rasmussen informed him the reason he was not selected for the Senior Manager Customer Care position was because of "the written warning." Hutchins contends this was a reference to the March 2008 PIP. Hutchins Dep. Vol. I, 139:20-22, 140:6-148:13. In evaluating this evidence, which must be construed most favorably towards Hutchins, the Court is mindful that it does not act as a "super-personnel department" that "seconds guesses [an] employer's business judgments." *Simms v. Oklahoma v. Dep't of Mental Health and Substances Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000), *Mickelsen v. Albertson's, Inc.*, 226 F. Supp. 2d 1238, 1248 (D. Idaho 2002).

Hutchins has not submitted direct evidence to support his claim of DIRECTV's discriminatory motive. While circumstantial evidence may be sufficient, it must be "specific" and "substantial." *Godwin*, 150 F.3d at 1222. The Supreme Court has recognized that an employer would be entitled to judgment as a matter of law "if the record conclusively revealed

**MEMORANDUM DECISION AND ORDER - 14**

some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

Unlike the facts in *Reeves*, where the plaintiff made a "substantial showing" that the defendant's actions were pretextual, the Court concludes here that Hutchins has not made a sufficient showing to preclude summary judgment. Hutchins' personal statements that he was more qualified or the better candidate for the positions do not create a material factual dispute. *See Simms*, 165 F.3d at 1329. It is the province of the employer, not the Court, to determine who is best qualified to hire for certain positions. Mr. Buffaloe has averred why certain candidates were selected instead Hutchins. None of these reasons are remotely suspect. Variously, the selected candidates had more experience, the required educational background, or were better performers in their current positions. The Fifth Circuit has stated that in order to establish pretext as Hutchins seeks to do here, he would need to establish that his qualifications "leap from the record and cry out to all who would listen that [he] was vastly - or even clearly - more qualified for the subject job." *Price v. Fed. Express Corp.*, 283 F.3d 715 (5th Cir. 2002). Hutchins' qualifications do not "jump off the page" in comparison to the other candidates. *See Denies v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999).

Furthermore, in regard to Mr. Rasmussen's alleged statement that Hutchins was not promoted because of the "written warning," this one statement alone does not create a material issue of fact regarding pretext. First, the written warning addressed several deficiencies in Hutchins' performance, not only his long lunches, but also that his team did not feel supported by

**MEMORANDUM DECISION AND ORDER - 15**

him and that he was inaccessible and difficult to find, both important elements of his position.

Secondly, although Mr. Rasmussen was the ultimate decision-maker, Mr. Buffaloe participated

in the interview and selection process for all but one of the positions for which Hutchins applied

(the exception being the corporate position).  Buffaloe Decl. ¶¶ 26-27.

In sum, the Court concludes that Hutchins has not demonstrated the "specific and

substantial evidence of pretext" to defeat summary judgment.  *Godwin*, 150 F.3d at 1221.  There

is abundant, uncontroverted, evidence of DIRECTV's legitimate, nondiscriminatory reasons for

not selecting Hutchins for the positions in question.  Accordingly, Hutchins' claim of

discrimination under the ADA is dismissed and DIRECTV's motion for summary judgment is

granted on this claim.

**2.      Retaliation under the ADA**

Hutchins alleges three counts of retaliation under the ADA.  The ADA provides: "No

person shall discriminate against any individual because such individual opposed any act or

practice made unlawful by this chapter or because such individual made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this

chapter."  42 U.S.C. § 12203(a).  A prima facie case of retaliation under the ADA requires proof

that the employee: (1) engaged in protected activity; (2) suffered an adverse employment action;

and (3) that there was a causal link between the two.  *Brown v. City of Tucson*, 336 F.3d 1181,

1186-87 (9th Cir. 2003).  If the employee establishes a prima facie case, the employee will avoid

summary judgment unless the employer offers legitimate reasons for the adverse employment

action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as

to whether such reasons are pretextual.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th

**MEMORANDUM DECISION AND ORDER - 16**

Cir. 2008).

### A. Hutchins was not Retaliated Against when he was Denied the Promotions

In Count Two of his Amended Complaint, Hutchins alleges that he was retaliated against when he was denied promotions within the company. He claims when he opposed his written warning (the PIP), he was engaging in protected activity and thus retaliated against when he was denied these promotions. Amend. Compl. ¶¶ 113-115.

The analysis of this claim mirrors the analysis above for Hutchins' discrimination claim based on denial of these same promotions. Even assuming for these purposes that Hutchins presents a prima facie case of retaliation, *i.e.*, that he was engaged in protected activity when he opposed the PIP, that he suffered an adverse employment action when he was denied these promotions, and that there was a causal link between the two[4], DIRECTV is entitled to summary judgment on this claim. DIRECTV has set forth legitimate, nondiscriminatory reasons, as detailed above, for why particular individuals were hired for the positions in question instead of Hutchins. These reasons include that the selected individuals had more or better-suited experience, the preferred educational background, and/or a better performance record.

Further, Hutchins has failed to establish pretext. Evidence of pretext must be specific and substantial in order to defeat summary judgment once an employer has articulated legitimate and nondiscriminatory reasons for its employment action. As detailed above, Hutchins' evidence that

---

[4] In *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065, the Ninth Circuit ruled that a nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation. *See also Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (addressing adverse employment action that occurred 13 months after protected activity). Hutchins received the PIP, which is the fulcrum of the claims presented in his Amended Complaint, in May 2008.

**MEMORANDUM DECISION AND ORDER - 17**

he was better qualified and Mr. Rasmussen's statement about the written warning do not rise to the "specific" and "substantial" level of evidence required. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). Again, as emphasized by several Circuits, the Court should not act as a "super-personnel department" that "second guesses an employer's business judgments." *Simms v. Oklahoma Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000); *Price v. Fed. Express Corp.*, 283 F.3d 715 (5th Cir. 2002). The Court is not making a hiring decision. Rather, the Court must look at whether DIRECTV has given legitimate reasons for hiring the other individuals instead of Hutchins, which it has, and whether Hutchins has created a material issue of fact on the issue of pretext, which he has not. Accordingly, DIRECTV will be granted summary judgment on count two.

### B.      Hutchins was Not Retaliated Against when Placed on Paid Leave

In Count Three, Hutchins alleges that following the charge of discrimination made to the IHRC and participating in its investigation, DIRECTV retaliated against him when he was placed on paid administrative leave beginning July 13, 2010. Amend. Compl. ¶¶ 118-119. Hutchins alleges that after he filed his charge of discrimination, the IHRC sent a letter to him in which the IHRC instructed him to identify the witnesses who could corroborate his charge and what they would likely say. Hutchins says that in order to respond to this letter request, he talked to several DIRECTV employees and asked them to write letters of support for him. DIRECTV contend that one of those individuals – a Team Leader employee DIRECTV contends was subordinate to Hutchins – was upset by the request and informed upper management at DIRECTV. An investigation ensued, and DIRECTV contends that Hutchins refused to cooperate in the

**MEMORANDUM DECISION AND ORDER - 18**

investigation, which led to his being placed on paid administrative leave pending the completion of the investigation.

The Ninth Circuit has not conclusively ruled upon whether paid administrative leave can constitute an adverse employment action.[5]  However, the Court will assume for purposes of this motion that Hutchins has proven a prima facie case of retaliation in the fact of being placed on paid administrative leave in the circumstances of this case.   Once an employee establishes a prima facie case of retaliation, under *McDonnell Douglas* the burden shifts to the employer to prove legitimate reasons for its adverse employment action.  Here, DIRECTV argues that it was justified in placing Hutchins on paid administrative leave and that its actions were not pretext for retaliation.  The Court agrees, as demonstrated in the facts of this particular claim.

On July 8, 2010, DIRECTV received complaints from Ms. Bickler, a Team Leader supervised by Hutchins, that Hutchins had requested that she write a favorable letter for his complaint of discrimination.  Bickler Dep., 58:14-63:22; Buffaloe Decl., ¶¶ 5-7.  Ms. Bickler said she was stressed about the request and worried if she did not agree to write the letter, Hutchins might retaliate against her because he was her manager.  Bickler Dep., 58:14-63:22 ("I just started to get a little stressed out about it, thinking, 'Why is he asking me to do this because he's my manager?  He monitors my calls.  He's going to do my yearly review.  If I don't tell him yes, then he may retaliate against me or do whatever' . . . I couldn't sleep . . . I was very upset.")

On July 13, 2010, Mr. Buffaloe asked Hutchins and if he had solicited letters of support from DIRECTV employees.  Hutchins responded that he "may have" and would need to speak

_____

[5] *See Dahlia v. Rodriguez*, 689 F.3d 1094, 1107 (9th Cir. 2012) (noting that the Ninth Circuit has never before decided whether placement on administrative leave constitutes an adverse employment action).

**MEMORANDUM DECISION AND ORDER - 19**

with his attorney prior to answering the question.  Buffaloe Decl. ¶ 11.  Mr. Buffaloe explained

the complaint he had received from the Team Leader and then placed Hutchins on paid

administrative leave for refusing to participate in the investigation.  *Id.*  Later that day, Hutchins

returned to DIRECTV with a letter from his attorney stating that he was engaged in protected

activity in asking for such a letter.  Mr. Buffaloe told Hutchins that his paid administrative leave

would be continued while DIRECTV reviewed the letter from his counsel. *Id*. ¶ 12.

The next day, Ms. Bickler reported to Mr. Buffaloe that another employee had

approached her.  This employee told her that Hutchins no longer needed the letter, said that

Human Resources was on a "witch hunt," and said that he would deny the conversation he had

just had with her if asked about it.  *Id*. ¶ 13.

On July 15, 2010, counsel for DIRECTV responded to Hutchins' counsel, telling him in a

reply letter that Hutchins was placed on paid investigatory suspension pending the outcome of its

investigation into the complaints it had received.  *Id*. ¶ 14, Ex. C.  DIRECTV requested that

Hutchins participate in the investigation.  *Id.*  Hutchins agreed to be interviewed and he met with

Mr. Buffaloe on July 27, 2010.  Hutchins acknowledged having requested letters from several

individuals, but denied making any request of a "direct report" or subordinate and specifically

denied requesting a letter from Ms. Bickler.  *Id*. ¶¶ 15-16; Buffaloe Dep., 89:11-25; Hutchins

Dep. Vol. II, 157:13-165:14, 170:18-24, 171:12-175:4, 179:12-25, Ex. 17.  Subsequent to that

meeting with Hutchins, Mr. Buffaloe also interviewed the various employees Hutchins had

contacted.  Buffaloe Decl. ¶¶ 17, 19-20.

Mr. Buffaloe called Hutchins on July 30, 2010, to  inform him that DIRECTV had not

completed its investigation and scheduled a meeting with Hutchins for August 10, 2010.  *Id.*

**MEMORANDUM DECISION AND ORDER - 20**

¶ 18.  However, on August 10, 2010 and before the scheduled meeting was to occur, Mr.

Buffaloe called Hutchins and informed him that his employment was terminated.  *Id*. ¶ 22.

DIRECTV has articulated legitimate, nondiscriminatory reasons for placing Hutchins on paid administrative leave.  DIRECTV received a complaint that one of Hutchins' direct reports feared retaliation if she did not comply with his request for a letter of support.  When Hutchins refused to cooperate in DIRECTV's investigation of the complaint, he was placed on administrative leave pending the outcome of the investigation.  It took DIRECTV less than a month to complete its investigation.  Given the facts that were before DIRECTV at the time it placed Hutchins on administrative leave, DIRECTV's actions were legitimate and reasonable.

Further, Hutchins has not established that DIRECTV's reasons for placing him on administrative leave were pretext for retaliation.  Pretext must be proven by "substantial" and "specific" evidence.  Hutchins has not provided any evidence that satisfies this burden.  The mere fact that the paid administrative leave followed his complaint of discrimination and requesting letters from other employees is not enough.  An employee complained that she feared retaliation after Hutchins's request and DIRECTV had a duty to investigate that complaint.  Hutchins has failed to raise a triable issue of fact as to whether DIRECTV's reasons for placing him on paid administrative leave were pretextual.  Even if Hutchins' testimony is credited and he did not, in fact, request a letter from Ms. Bickler, it remains that Ms. Bickler made a complaint to DIRECTV about Hutchins and DIRECTV was obligated to investigate that complaint.  DIRECTV conducted its investigation in a reasonable amount of time.  The Court concludes that Hutchins has not shown specific and substantial evidence of pretext to defeat summary judgment and accordingly, DIRECTV will be granted summary judgment on count three.

**MEMORANDUM DECISION AND ORDER - 21**

C.      There is a Question of Fact about whether DIRECTV Retaliated Against
        Hutchins when he was Terminated

In his fourth cause of action, Hutchins alleges that his termination from employment on

August 10, 2010 was an act of retaliation for his charge of discrimination filed with the IHRC as

well as for gathering information in support of his charge.  Amend. Compl. ¶¶ 122-123.  In the

retaliation context, an adverse action is one that is "materially adverse," in that it "well might

have dissuaded a reasonable [individual] from making or supporting a charge of discrimination."

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).  Deterrence is the

key measure of adverse action in ADA retaliation claims.  *Pardo v. Kaiser Permanents Hosp.,*

*Inc.*, 389 F.3d 840, 850 (9th Cir. 2004).  Termination fits well within the definition of an adverse

employment action.  The temporary proximity between the protected activity and the adverse

action provides a prima facie case of a causal link between the two.  *Id*.  Here, Hutchins was

terminated within a month of request for letters in support of his discrimination charge.  This is

close enough in time to justify an inference of causation.  *See Miller v. Fairchild Indus., Inc.*, 885

F.2d 498, 505 (9th Cir. 1989) (fact that adverse action occurred less than 42 days after protected

activity satisfied plaintiff's burden to show prima facie case of causation).

Because Hutchins has established a prima facie case of retaliation, the burden shifts to

DIRECTV to offer a nonretaliatory reason for his termination.  DIRECTV submits that Hutchins

was terminated because he requested letters from subordinate level employees which was

deemed inappropriate given his position as a manager.  Additionally, the fact that the requests

were made in close proximity to the calibration review in which Hutchins had the ability to

influence the reviews of Team Leaders informed DIRECTV's decision to terminate his

**MEMORANDUM DECISION AND ORDER - 22**

employment.  Buffaloe Decl. ¶ 21.  This suffices to shift the burden back to Hutchins.

Hutchins has submitted circumstantial evidence that, if inferences are drawn most favorably on his behalf, would allow a jury to conclude that DIRECTV's proffered reasons for Hutchins' termination were pretextual.  The Court considers that Hutchins denies asking Ms. Bickler for a letter of support, one of her complaints did not address Hutchins but instead a third party (Mr. Sparks), and no other employees made complaints about Hutchins's requests for letters.  When construing these facts in the light most favorable to Hutchins, the Court finds a jury could find in favor of Hutchins on this retaliation claim.  However, that same record does not establish retaliation as a matter of law, as Hutchins seeks the Court to rule.  Accordingly, both motions are denied on count four.

## CONCLUSION

The Court finds that Hutchins' claim of discrimination based on PIP is barred by the both state and federal statute of limitations.  Hutchins' second basis for discrimination, the 2009 performance review, was not an adverse employment action and accordingly is dismissed.  The Court finds that DIRECTV has articulated legitimate, nondiscriminatory reasons for failing to promote Hutchins to five positions that are the basis for part of his discrimination claim in count one and a retaliation claim in count two.  Hutchins also failed to establish pretext on these claims and accordingly, they are dismissed.  Similarly, the Court finds that DIRECTV provided a legitimate, nondiscriminatory reason for placing Hutchins on paid administrative leave in July 2010 and he has not demonstrated pretext in order to defeat summary judgment on count three.

With respect to Hutchins' final claim, retaliation based on his termination, the Court finds there is a genuine issue of material fact as to whether DIRECTV's reasons for terminating

**MEMORANDUM DECISION AND ORDER - 23**

Hutchins were pretextual.  Accordingly, the Court denies summary judgment on count four.

**ORDER**

**IT IS HEREBY ORDERED that**:

     1)     Defendant DIRECTV Customer Service, Inc.'s Motion for Summary Judgment (Dkt. 42) is GRANTED IN PART and DENIED IN PART; and

     2)     Plaintiff Shane D. Hutchins' Motion for Partial Summary Judgment (Dkt. 48) is DENIED.

DATED:  **August 5, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge